UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | | |
|---|---|---|
| ANTHONY BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-CV-123-KSF |
| | ) | |
| V. | ) | |
| | ) | |
| UNIVERSITY OF KENTUCKY | ) | **MEMORANDUM OPINION** |
| COMPREHENSIVE ASSESSMENT & | ) | **AND ORDER** |
| TRAINING SERVICES, *et al*., | ) | |
| | | |
| Defendants. | | |

**** **** **** ****

In April 2012, Anthony Brown, on behalf of himself and his minor children N.B., M.E.B., and M.A.B., filed a civil rights complaint [R. 1], and an amended complaint [R. 11] action alleging that the sixty-four named defendants violated his rights guaranteed under the federal and Kentucky constitutions and that they committed various torts arising under state common law.  Brown further alleged that the defendants violated the constitutional rights of his three minor children.[1]

During the pendency of this action, Brown has also filed motions to compel defendants Hedrick and Baker to produce court documents [R. 8]; to hold four defendants in contempt of court [R. 14]; to grant him additional time to respond to the motions to dismiss filed by five defendants [R. 17]; and to strike an allegedly "misleading" pleading filed by five of the defendants.  [R. 23]

---

[1] Brown initially alleged that federal subject matter jurisdiction for his claims arose under 28 U.S.C. §§ 1331 and 1343, and that supplemental jurisdiction over his state claims arose under 28 U.S.C. § 1376.  Brown referenced 42 U.S.C. § 1983 in later passages of his original complaint [R. 1. pp. 61, 63, 64, 67, and 68] but expressly invoked 42 U.S.C. § 1983 as the basis for jurisdiction in his amended complaint.  [R. 11, pp. 107, 109, 112, 113, 115, 117, 119, 121, and 126]  Because Brown alleges that the defendants against whom he asserts are state and county officials, his claims properly fall under 42 U.S.C. § 1983, not 28 U.S.C. § 1331.

Five defendants are represented by counsel and have filed a motion and an amended motion to dismiss Brown's claims against them.[2] [R. 10 and R. 16].  In addition, because the Court granted Brown's motion to proceed *in forma pauperis* [R. 6], it must dismiss his complaint, at any time, if it determines that it is frivolous, fails to state a claim for relief, or seeks damages from a defendant that is immune to such a claim. 28 U.S.C. §1915(e)(2)(B).  This screening requirement applies to suits filed by prisoners and regular citizens alike.  *McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997); *see also Horrigan v. Haworth*, No. 10–cv–462, 2010 WL 2490673, at *2 (W.D. Mich. June 16, 2010); *Murphy v. Shelton*, No. 08–cv–14140, 2009 WL 187714, at *1 (E.D. Mich. Jan. 23, 2009).

The Court evaluates Brown's claims under a more lenient standard because he is not represented by an attorney.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003).  At this stage, the Court accepts Brown's factual allegations as true, and liberally construes his legal claims in his favor.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Having reviewed Brown's claims against all named defendants, the Court will his dismiss his complaint and amended complaint because the claims which he asserts therein are barred by Kentucky's one-year statute of limitations, and will deny as moot all but one of Brown's pending motions.

## BACKGROUND

In his complaint, Brown alleged that in 2007, Elizabeth Brown initiated divorce proceedings against him in the Greenup Circuit Court, Case No. 07-CI-575.  In that divorce proceeding, Elizabeth

---

[2]   These defendants are: (1) Jeffrey L. Preston, Judge, Greenup Circuit Court; (2) Patrick Yewell, Administrative Office the Courts ("AOC") employee; (3) Toni Mullins, AOC employee; (4) C. Phillip Hedrick, Boyd County Attorney; and (5) Linda Kay Baker, Boyd Circuit Court Clerk.

allegedly filed frivolous motions and falsely accused Brown of child abuse and domestic violence. [R. 1, p. 13, ¶ 61]  In early 2008, defendant Elizabeth Strong and other officials employed by the Kentucky Cabinet for Health and Family Services ("the Cabinet") interjected themselves into the divorce proceeding by filing reports recommending that the Brown children be placed in foster care in Kentucky.  [*Id*., p. 14-15, ¶¶ 65-74]  Brown claims that the Cabinet officials undertook these actions "... in order to receive federal funding," allegedly knowing that "... the parents would not have sufficient means from the ongoing divorce proceedings to mount a legal challenge." [*Id*., p.15, ¶ 73]  Brown contends that both the Cabinet and the Administrative Office of the Courts reap a financial benefit in the form of federal funding by placing children in foster care.  [*Id*., p. 16, ¶ 75]

On April 7, 2009, Greenup County Circuit Judge Jeffrey L. Preston issued an order in the divorce proceeding directing the Cabinet to "...illegally seize the children of Mr. Brown at the courthouse." [*Id*., p. 16, ¶ 77]  The Greenup County Sheriff's Office allegedly threatened to arrest Brown if he tried to leave the courthouse.  [*Id*.]  Brown claims that between April 7, 2009 and August 19, 2010, Cabinet officials, including Geoffrey Pathmore and Rebecca Shutt, and other defendants continued to generate allegedly inaccurate reports recommending that Brown's children be placed in foster care in Kentucky.  [*Id*., pp. 16-28]

On August 19, 2010, Vanessa Fannin, a social worker for the Boyd County Attorney's Office for Protection and Permanency of the Department for Community Based Services, issued a report concluding that - based upon evidence provided during a hearing in the divorce proceeding - Elizabeth "Fannin" (presumably, Elizabeth Brown), had allowed a man identified as Eddie Rucker to sexually assault M.E.B. in a semi-truck during a cross-country trip. [*Id*., p. 27, ¶ 131] As a result of this evidence, Fannin stated that a case would be opened "'... for long term services of 9-12

3

months to assist the family in eliminating the issues that have led to the judge ordering the children removed from both parents placement in foster care on August 25, 2010.'" [*Id.*, ¶ 132]  On August 19, 2010, Connie Kennedy assigned, and Paul Moore approved, Referral Number 3, which "subsequently placed" N.B., M.E.B., and M.A.B. in foster care.  [*Id.*, ¶ 133]

On August 25, 2010, Judge Preston issued an order in the divorce proceeding placing N.B., M.E.B.., and M.A.B., in foster care in Kentucky.  [*Id.*, p. 28, ¶ 135]  Brown claims that Preston had no authority to enter an order in a divorce proceeding directing the placement of his children in foster care; that the Cabinet was required to investigate, file a petition, notify the parents, and provide a hearing within 72 hours, but that it failed to do so; that Preston's factual findings were substantively insufficient; and that Preston had no jurisdiction to order the placement of N.B. and M.A.B. in foster care in Kentucky because they were Florida residents at that time and had not been abandoned.  [*Id.*, pp. 28-29; ¶¶ 136-142]  Brown further alleges that defendant NECCO and the foster parents "...received financial benefits of N.B., M.A.B., and M.E.B. being placed in Kentucky foster care although no petition had yet been filed."  [*Id.*, p. 29, ¶ 144a]

On September 17, 2010, Misty J. Monn filed three petitions in the Boyd Circuit Court on behalf of M.E.B., M.A.B., and N.B., (Case Nos. 10-J-187, 10-J-188, and 10-J-189) ("the Foster Care Proceedings") seeking their placement in foster care in Kentucky on the grounds that their parents had neglected them.  [*Id.*, pp. 34, ¶¶ 170(a)-170(c)]  Brown alleges that Monn knew that the allegations were false; that none of the petitions met statutory requirements; and that he was not served with any of the petitions in accordance with Kentucky law.  [*Id.*, p. 34-36, ¶¶ 170(d)-(m)]

On that same date, Judge Preston issued orders in the Foster Care Proceedings placing the children in the Cabinet's custody on an emergency basis, finding the children were facing immediate

4

danger because the parents refused to provide for their safety and needs. [*Id.*, p. 36, ¶¶ 170(n); p. 37, ¶ 170(s)] Brown alleges that Preston knew that the neglect and "imminent danger" allegations were false; that Preston failed to make adequate findings of fact to support removing the children from his custody and placing them in foster care; that the statements which Preston made in support of his ruling were false; and that Preston lacked jurisdiction to order foster care placement for two of the children who lived in Florida with him. [*Id.*, pp. 36-41; ¶¶ 170(o)-190]

Brown's original complaint is confusing in places as to the exact sequence of events, but he appears to allege that his children remained in court-ordered foster care until August 2011. [*Id.*, p. 45, ¶ 200] Brown alleged that subsequent to September 17, 2010, numerous defendants violated his constitutional rights by taking actions which extended his children's placement in foster care until August 2011. *See* Complaint [R. 1, pp. 39-45 ¶¶ 179-200]

In his amended complaint, [R. 11] Brown essentially reiterated the same factual allegations set forth in his original complaint, but added more details as to each claim and asserted claims against nine defendants he did not identify in his original complaint. The claims which Brown asserted against the nine new defendants stem from his earlier allegations that Judge Preston, in conspiracy with Fannin and Monn, violated his constitutional rights by ordering his children in foster care in August 2010 and September 2010, and that numerous other defendants perpetuated those constitutional violations by employing defective testing and assessment procedures, falsifying the results of assessment tests, and/or by failing to monitor the foster care placement after it was ordered by Preston.

Brown claims that Judge Preston violated his state and federal due process and equal protection rights, and the state and federal constitutional rights of his minor children, by (1) placing

5

the children in foster care on August 19 and 25, 2010, pursuant to an order issued in the divorce proceeding, and (2) requiring him to submit to drug testing. [R. 1, pp. 61-68, Counts 1-18] Brown alleges that the other sixty-three named defendants also violated his due process and equal protection rights, and the constitutional rights of his minor children, by taking actions which prompted, contributed to, facilitated, or resulted in, Preston ordering the placement of his children in foster care on August 19 and 25, 2010. [*Id.*]

Brown also alleges that Tracey Frey, his attorney in both the divorce proceeding and the Foster Care Proceedings, did not effectively represent him and thereby violated his federal and state constitutional rights. Additionally, Brown alleges that all of the defendants committed the state law torts of outrage, abuse of process, false imprisonment, invasion of privacy, libel, negligent and intentional infliction of emotional distress, and publication of private facts, in connection with these events. [*Id.*, pp. 68-75, Counts 19-48]

Brown seeks an injunction (1) ordering the Boyd County Attorney to investigate the residency of the children at the time they were placed in foster care in August 2010, and (2) ordering the Boyd Circuit Clerk to provide him with (a) the documents which led to the filing of the Foster Care Proceedings and (b) a case history of the Foster Care Proceedings. Brown also seeks substantial compensatory and punitive damages from all named defendants.

## DISCUSSION

Brown's claims against all of the named defendants will be dismissed because they are barred by the applicable statute of limitations. Because § 1983 does not provide its own statute of limitations, federal courts "borrow" the applicable limitations period from the state where the events occurred. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Wilson v. Garcia*, 471 U.S. 261, 276-79

6

(1985). For constitutional torts committed in Kentucky, the one-year limitation period under Ky. Rev. Stat. § 413.140(1)(a) for bringing general personal injury actions applies. *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 181–82 (6th Cir. 1990).

Federal law governs when the statute of limitations begins to run. *Wilson*, 471 U.S. at 267; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). A cause of action accrues when "... the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991); *see also Sevier*, 742 F.2d at 273.

In this case, Brown's factual allegations focus at length on the conduct of the defendants from early 2008 until August 19 and 25, 2010, when Judge Preston first ordered the Cabinet to take emergency custody of his children and required him to submit to drug testing. Brown claims these actions constituted a conspiracy by the defendants to violate his state and federal civil rights and various common law torts. *See* Complaint, Counts 1-4 [R. 1, p. 61, ¶¶ 282; 284-285]; Counts 5-8 [p. 63, ¶¶ 292; 294-295]; Counts 9-12 [p. 65; ¶ 303]; Counts 13-16 [p. 67; ¶ 318]; Counts 17-18 [p. 68; ¶ 321]; Counts 19-22 [p. 69, ¶¶ 333-335] Further, Brown alleges that Judge Preston, Fannin, and Monn used "willful acts" to initiate the Foster Care Proceedings on September 17, 2010, to deprive him of his due process rights and to "...cover up the illegal acts" in the divorce proceeding. *See* Complaint, Counts 29-32 [*Id.*, p. 70, ¶¶ 349-352]

Under the facts alleged, Brown either clearly knew or should have known of the defendants' actions and his resulting injuries as early as August 19, 2010, and no later than September 17, 2010, the date on which the orders were entered in the Foster Care Proceedings. Thus, Brown's § 1983 claims alleging unconstitutional and tortious conduct accrued no later than September 17, 2010. To

7

satisfy Kentucky's one-year statute of limitations applicable to § 1983 actions, Brown should have filed this civil rights complaint on or before September 17, 2011. Because he did not file suit until April 25, 2012, his claims are barred by the statute of limitations.

Brown does allege that the defendants' actions were "continuous and ongoing in nature." *id*., p. 74, ¶ 375; and that his children remained in court-ordered foster care until August 2011. These statements could be liberally construed as an attempt to argue that the "continuing violations" doctrine tolled the limitations period. The continuing violations doctrine preserves claims that would otherwise be time-barred if the plaintiff can show a continuous and ongoing violation of his rights. *Phillips v. Cohen*, 3 F. App'x 212, 218 (6th Cir. 2001). The Sixth Circuit recognizes two types of continuing violations, "those alleging serial violations and those identified with a longstanding and demonstrable policy of discrimination." *Sharpe v. Cureton*, 319 F.3d 259, 288 (6th Cir. 2003). The continuing violations doctrine is a narrow exception to the statute of limitations rule, and federal courts are hesitant to apply it outside the context of a Title VII employment discrimination case. *Id*. at 267.

The continuing violation doctrine is inherently designed to address systemic, policy-based discrimination or injury. *Cuco v. Fed. Med. Ctr.-Lexington*, 2006 WL 1635668, at *30, n.12 (E.D. Ky. June 9, 2006). The facts surrounding a discrimination claim are uniquely suited to a continuing violation. *Phat's Bar & Grill, Inc. v. Louisville-Jefferson County*, No. 3:10-CV-00491-H, 2013 WL 124063, at *3 (W.D. Ky., Jan. 9, 2013) ("A discriminatory policy often has a constant and ongoing discriminatory effect on those who suffer under the policy, whereas other constitutional violations are often complete and claims therefor fully accrue at the time the alleged unlawful act occurs and the injury is endured, even though the violations may be connected to other violations.").

8

To determine if the plaintiff has alleged a "continuing violation," the Court must conduct a three-part inquiry:

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern . ... Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiffs must have been avoidable if the defendants had at any time ceased in the wrongful conduct.

*Tolbert v. State of Ohio Dept. of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999); *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997). The acts constituting a continuing violation cannot be discrete acts or merely "continual ill effects from an original violation." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). The continuing violations doctrine was not designed to extend the statute of limitations in cases involving "discrete acts with a corresponding series of discrete injuries." *Phat's Bar & Grill, Inc.*, 2013 WL 124063, at *4.

Likewise, Kentucky courts have traditionally only applied the doctrine in employment discrimination contexts. *See Ammerman v. Bd. of Educ. of Nicholas Cnty.*, 30 S.W.3d 793, 798–99 (Ky. 2000); *Leonard v. Corr. Cabinet*, 828 S.W.2d 668, 670–72 (Ky. Ct. App.1992). The continuing violations doctrine does not apply to unlawful actions that are separate, distinct and discrete. *Leonard*, 828 S.W.2d at 670. As an example of the difference between a discrete act and a continuing violation, the court in *Leonard* compared a discriminatory discharge with a policy of paying women less than men. *Id.*

*Eidson* is an instructive case on the issue of whether the "continuing violation" doctrine applies in cases involving § 1983 claims based on the state placing minor children in foster care. In that case, Leilani Mooneyham, an official with the State of Tennessee's Child Protective Services ("CPS"), removed Eidson's daughters from his custody in November 2003, based on the mother's

allegation that Eidson had sexually abused their daughters. *Eidson*, 510 F.3d at 633. The CPS did not file the neglect and abuse petition, required by state law, in juvenile court until May 24, 2004. On that same date, the juvenile court awarded the CPS temporary custody of the children, and the CPS placed the children with their mother. *Id*. On July 24, 2004, the juvenile court awarded Eidson custody of the children for a 90-day trial period, and on October 22, 2004, awarded Eidson full custody of the children. *Id*. at 634.

One year later, on October 25, 2005, Eidson filed a § 1983 complaint, alleging that Mooneyham had given perjured testimony which resulted in the juvenile court finding probable cause to remove the daughters from his custody, and that these actions violated his constitutional rights. The district court granted the defendant's motion to dismiss the action as untimely. *Id*. On appeal, Eidson argued that because the defendants engaged in continuing wrongful conduct from the date of the initial removal in May 2004 through October 22, 2004, the date on which he regained legal custody of his children, he timely filed his complaint on October 24, 2005, pursuant to the continuing violation doctrine. *Id*. at 634-35.

The Sixth Circuit rejected that argument as groundless, finding that "... by the conclusion of the May 2004 hearing, the premises of plaintiff's substantive due process claims, *i.e.*, Mooneyham's allegedly perjured testimony and the finding of probable cause to remove the daughters, were certainly known to plaintiff." *Id*. at 636. Further, the court further explained that "... the injury resulting from the precipitating event [the removal of the children in November 2003] had been substantially remedied in July 2004 - the return of plaintiff's daughters having thus avoided any continuing constitutionally cognizable injury. *Id*. at 636-37. Finally, the court rejected Eidson's contention that the CPS had continually interfered with his rights during the 90-day placement period

10

(between July 2004 and October 2004), finding that his claim on this issue was at best one alleging an "ill effect" of the original removal of the children, but not one alleging continuing *unlawful* conduct by the CPS. *Id*. at 637.

Sixth Circuit precedent consistently indicates that the statute of limitations begins to run when the minor child is taken from the plaintiff's custody and placed into foster care or other forms of state custody. *See McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988); *Minow v. State of Tennessee*, 191 F.3d 452, 1999 WL 776307, at *1 (6th Cir. 1999) (unpublished). In *Minow*, state authorities took the plaintiffs' daughter from the plaintiffs in January 1996, and placed her in foster care where she remained for six months, until July 1997. The parents filed a § 1983 complaint in April 1998, but the district court dismissed it as untimely because they had not filed it within one year of the child's placement in foster care in January 1996. The parents argued that the statute of limitations should be tolled until July 1997, when their child was returned to them.

The Sixth Circuit affirmed the dismissal, finding that the plaintiffs' claims were time-barred. The court observed that "[i]f a continuing violation is alleged, the limitations period begins to run when an average person would have been alerted to the need to protect his rights." *Minow*, 1999 WL 776307 at *1. The court held the parents should have been aware of their § 1983 claim on the day in January 1996 when their daughter was taken into state custody, and the fact that Tennessee authorities simply retained the children in their custody was not sufficient to establish a continuing violation. *Id*. *See also Jackson v. Mix*, 477 F. Supp. 2d 918, 921 (M.D. Tenn. 2007) (limitations period began to run when state authorities took custody of the plaintiff's minor child, and the fact that the child remained in state custody for nearly a year did not amount to a continuing violation).

11

Based on the rationale set forth in *Eidson*, *Minow*, and *Jackson*, the orders which Judge Preston entered in August 2010 (in the divorce proceeding) and/or in September 2010 (in the Foster Care Proceedings) constitute separate, distinct, and discrete actions, of which Brown was, or should have been, immediately aware when they occurred, and which resulted in a "corresponding series of discrete injuries." *Phat's Bar & Grill, Inc.*, 2013 WL 124063, at *4. Neither these actions nor subsequent actions or orders flowing from them can be considered a "continuation violation." The fact that Brown's minor children remained in state custody until August 2011 does not amount to a continuing violation which tolled the statute of limitations past September 17, 2011. Any construed argument that the "continuing violation" doctrine tolls the one-year statute of limitations past September 17, 2011, lacks merit.

As noted, defendants Toni Mullins, Jeffrey Preston, Patrick Yewell, C. Phillip Hedrick, and Linda Kay Baker have, through counsel, filed an original and amended motion to dismiss the claims against them [R. 10, 16], but they did not raise the statute of limitations as a defense. The statute of limitations is normally an affirmative defense that must be raised by defendants in an answer, but if the limitations bar appears on the face of the complaint, a district court may apply it during the initial screening process. *See*, *e.g.*, *Watson v. Wayne County*, 90 F. App'x. 814, *1 (6th Cir. Jan. 26, 2004) ("If a statute of limitations defense clearly appears on the face of a pleading, the district court can raise the issue *sua sponte*") (citing *Pino v. Ryan*, 49 F.3d 51, 53–54 (2d Cir.1995)); *Alston v. Tennessee Department of Corrections*, No. 01-5818, 2002 WL 123688, at *1 (6th Cir. Jan. 28, 2002) (unpublished) ("because the statute of limitations was obvious from the face of the complaint, *sua sponte* dismissal of the complaint was appropriate."); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as

true, show the plaintiff is not entitled to relief.  If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim ....").

When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, a district court has authority to dismiss the time-barred claims on its own motion.  *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Beach v. Ohio*, No. 03–3187, 2003 WL 22416912, at * 1 (6th Cir. Oct.21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002 WL 31780936, at *1 (6th Cir. Dec.11, 2002); *Paige v. Pandya*, No. 00-1325, 2000 WL 1828653 (6th Cir. Dec. 5, 2000);  *see also  Johns v. Maxey*, No. 2:07-CV-238, 2008 WL 4442467, at *1 (E.D. Tenn. Sept. 25, 2008) (district court *sua sponte* dismissed case brought by non-prisoner-plaintiffs who had been granted pauper status under § 1915(e)(2) on statute of limitations grounds).  Under this authority, Brown's claims against these five defendants, as well as his claims against the other fifty-nine named defendants, are time-barred, as all his claims arise from the same nucleus of operative facts.

In analogous cases, district courts have applied the statute of limitations to a plaintiff's claims where one defendant, or set of defendants, had affirmatively raised the defense but other defendants failed to do so.  *See Griffin v. Reznick*, 609 F. Supp. 2d 695, 708-09 (W.D. Mich. 2008) (finding that plaintiff had been put on notice of a statute of limitations argument by filing of other co-defendants' answers asserting the defense); *P. & E. Elec., Inc. v. Utility Supply of America, Inc.*, 655 F. Supp. 89, 95 n.1 (M.D. Tenn. 1986) ("...the defense of statute of limitations was raised by each of the other defendants and responded to by the plaintiff.  The issues raised by that defense would be identical for the defendants Don Wood and Utility. [T]he interests of justice require the Court to consider the

13

defense as not having been waived.").  The same rationale that warranted applying the statute of limitations defense in those cases warrants its application in this case, where five defendants have not yet raised the defense.  Here, Brown's claims against all of the named defendants originate from the alleged deprivations of his constitutional rights from early 2008 to August and September 2010, when his children were placed in foster care.  Kentucky's one- year statute of limitations therefore applies to his claims against all of the defendants.

For these reasons, Brown's § 1983 and pendent state law claims stemming from the allegedly unconstitutional placement of his children in foster care in August and/or September 2010 are barred by Kentucky's one-year statute of limitations and will be dismissed with prejudice.[3]  Brown is therefore not entitled to the injunctive relief which he seeks from the Boyd County Attorney or the Boyd Circuit Clerk.  The Court will also deny as moot the motions to dismiss [R. 10 and 16] filed by defendants Toni Mullins, Jeffrey Preston, Patrick Yewell, C. Phillip Hedrick, and Linda Kay Baker; grant Brown's motion [R. 17] requesting an extension of time to respond to the motions to dismiss; and deny as moot Brown's other motions seeking various forms of substantive and procedural relief [R. 8, 9, 14, and 23].

**CONCLUSION**

Accordingly, **IT IS ORDERED** that:

1.    Plaintiff Anthony Brown's motion to compel Defendants C. Phillip Hedrick and Linda Kay Baker to produce court documents [R. 8] is **DENIED** as **MOOT**.

---

[3] While it is unnecessary to address other grounds for dismissal, Brown's claims would also be subject to dismissal on the grounds of judicial immunity as to defendant Jeffrey L. Preston; Eleventh Amendment sovereign immunity as to other state officials; and social worker immunity as to the numerous social worker defendants Brown has named in this action.

2.      Brown's motion requesting an order directing the United States Marshals Service to serve the defendants with summons [R. 9] is **DENIED** as **MOOT**.

3.      Brown's motion to hold defendants Toni Mullins, Jeffrey L. Preston, Patrick Yewell, C. Phillip Hedrick, and Linda Kay Baker in contempt of court [R. 14] is **DENIED** as **MOOT**.

4.      Brown's motion for an extension of time [R. 17] in which to respond to the defendants' motions to dismiss is **GRANTED**, Brown having subsequently filed two responses [R. 20 and 21].

5.      Brown's motion [R. 23] to strike the September 28, 2012, Reply filed by Mullins, Preston, Yewell, Hedrick, and Baker [R. 22] is **DENIED** as **MOOT**.

6.      The Motion to Dismiss [R. 10] and the Amended Motion to Dismiss [R. 16] filed by defendants Toni Mullins, Jeffrey L. Preston, Patrick Yewell, C. Phillip Hedrick, and Linda Kay Baker are **DENIED** as **MOOT**.

7.      Brown's constitutional and pendant state law claims against all sixty-four named defendants are **DISMISSED WITH PREJUDICE**.

8.      The Court will enter an appropriate judgment.

9.      This matter is **STRICKEN** from the active docket.

This March 13, 2013.



**Signed By:**

_**Karl S. Forester**_   K S F

**United States Senior Judge**